

UNITED STATES DISTRICT COURT _____ D.C.
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION                    OCT 30  PM 4: 14

CASE NO.  06-21360
CIV-COOKE
MAGISTRATE JUDGE BROWN (ORDER OF REFERRAL 5/31/06)


PAULA PEREZ,

      Plaintiff,

v.

THE FINISH LINE, INC., a Foreign corporation,
VORHEES STUDIOS, INC., a Foreign
corporation, MICHAEL VORHEES,
KATHLEEN VORHEES, MC$^2$ MODELS MIAMI,
LLC, a Florida limited liability company
f/k/a KARIN MODEL, USA, LLC,
and KHALID SALAAM

      Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, PAULA PEREZ (hereinafter "Plaintiff") files this cause of action against

Defendants; THE FINISH LINE, INC. (hereinafter "Finish Line"); VORHEES STUDIOS, INC.

(hereinafter "Vorhees"); MICHAEL VORHEES; KATHLEEN VORHEES; MC$^2$ MODELS

MIAMI, LLC (hereinafter "MC$^{2}$"); and KHALID SALAAM.

### JURISDICTION, VENUE AND PARTIES

1.    This is an action for compensatory damages in excess of the jurisdictional limits

of this court.

2.    Plaintiff, at all times material to this action, was and is a resident and/or

domiciliary of Miami-Dade County, Florida.

3.     At all times material to this action, Finish Line was and is a foreign corporation licensed to and doing business in Miami-Dade County, Florida.

4.     Finish Line is in the business of selling footwear and clothing, including athletic shoes, recreational boots, jerseys, accessories, and the like, within the United States including, but not limited to, Miami-Dade County, Florida.

5.     At all times material to this action, Finish Line engaged in marketing and campaigning its products through advertisements including the use of models.

6.     At all times material to this action, Vorhees was and is a foreign corporation who conducted business in Miami-Dade County, Florida.

7.     Vorhees is a photography studio which is in the business of taking photographs for various purposes including, but not limited to, advertising campaigns by its clients including, but not limited to, Finish Line.   Vorhees conducts business within the United States and, at all times material herein, was conducting business with Finish Line and the other defendants in Miami-Dade County, Florida.

8.     At all times material to this action, Vorhees engaged in marketing and campaigning its photography work through photographs taken of models including photographs of Plaintiff.

9.     Michael and Kathleen Vorhees are residents of California and at all times material were the sole owners and employees of Vorhees and either in their individual capacity or on behalf of Vorhees.

10.     At all times material to this action, MC$^2$ was and is a Florida corporation licensed to and doing business in Miami-Dade County, Florida.

11.     $MC^2$ is a successor in interest to Karin Models USA, LLC which was doing business as Karin Models.

12.     $MC^2$ is a modeling agency and represents models in various capacities of modeling work including photo shoots for photographic images used by various entities/persons including, but not limited to, the named defendants herein, for print advertising.

13.     At all times material to this action, $MC^2$ engaged in marketing its models from its office in Miami-Dade County, Florida to different clients including, but not limited to the named defendants herein.

14.     At all times material, Khalid Salaam was the owner and/or booking agent of $MC^2$ who represented Plaintiff and procured a job for her through negotiations in Miami-Dade County, Florida with the named defendants herein, on November 16, 2004 in Miami-Dade County, Florida.   More specifically, the job procured was a photo shoot for a Finish Line catalogue.   At all times material, Khalid Salaam acted either in his individual capacity or on behalf of $MC^2$.

15.     At all times material herein, $MC^2$ had an agreement with Plaintiff which in no uncertain terms provided that $MC^2$ did not control the terms and conditions of Paula Perez' services. This agreement is attached hereto as Exhibit "A".

16.     On or about November 16, 2004, Plaintiff executed an agreement whereby she authorized Finish Line to use her image for display within a catalogue and for only one (1) year (see agreement executed by Michael Vorhees, on behalf of Finish Line, and Paula Perez dated November 16, 2004 attached hereto as Exhibit "B").

## COUNT I – ACTION AGAINST FINISH LINE PURSUANT TO FLA. STAT. §540.08

Plaintiff realleges paragraphs 1 through 16 as if set forth fully herein.

17.    Plaintiff is a professional model who at all times material herein was obtaining work through $MC^2$.

18.    Finish Line caused to be published or published certain advertisements containing photographic images of Plaintiff in other advertising media for marketing and campaigning its products worldwide including, but not limited to, in Miami-Dade County, Florida, without the express written or oral consent required by Plaintiff.

19.    That at all times material to this action, Finish Line violated Fla. Stat. §540.08. More specifically, Finish Line violated Fla. Stat. §540.08 by publishing photographic images of Plaintiff in advertising media, including "point of sale," and other than within the catalogue for purposes of marketing and campaigning its products within the United States including, but not limited to Miami-Dade County Florida, without the express, written or oral consent given by Plaintiff.

20.    Pursuant to Fla. Stat. §540.08, Plaintiff is entitled to reasonable royalties, and any other such damages for any loss or injuries sustained by Plaintiff by reason of Finish Line's breach.

WHEREFORE, Plaintiff demands judgment against Finish Line for compensatory damages, cost and attorney's fees pursuant to Fla. Stat. §540.08 and §448.08 and requests trial by jury on all issues so triable as of right.

## COUNT II – ACTION AGAINST FINISHLINE FOR BREACH OF CONTRACT

Plaintiff realleges paragraphs 1 through 18 as if fully set forth herein.

21.    The agreement attached as Exhibit "B" is a valid and enforceable contract that was entered into by Plaintiff and Finish Line through Finish Line's authorized representative, Michael Vorhees.

4

22.     At all times material herein, Michael Vorhees, Kathleen Vorhees, and Vorhees Studios were authorized representatives of Finish Line.

23.     Finish Line breached this agreement by virtue of its having published photographic images of Plaintiff in advertising media, including point of sale and other than within the catalog for purposes of marketing and campaigning its products within the United States including, but not limited to, Miami-Dade County, Florida, without the express, written or oral consent given by Plaintiff.

24.     As a result of Defendant's breach, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Finish Line including, but not limited to, reasonable royalties, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest. Plaintiff also requests further relief this court deems just and proper and demands trial by jury.

## COUNT III – CONVERSION CLAIM AGAINST FINISH LINE

Plaintiff realleges paragraphs 1 through 18 as if fully set forth herein.

25.     Finish Line obtained and used the property of Plaintiff, specifically the photographs in question, either with the intent to temporarily or permanently deprive Plaintiff of her property and to appropriate the property to Finish Line for Finish Line's own use and gain.

26.     Finish Line's actions constitute an act of dominion – wrongfully asserted over Plaintiff's property inconsistent with its ownership therein.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Finish Line including, but not limited to, reasonable royalties, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest. Plaintiff also requests further relief this court deems just and proper and demands trial by jury.

## COUNT IV – ACTION AGAINST VORHEES PURSUANT TO
## FLA. STAT. §540.08

Plaintiff realleges paragraphs 1 through 16 as if fully set forth herein.

27.    At all times material herein, Vorhees knew or should have known that Plaintiff's agreement with $MC^2$ provided that any use of her name, likeness, photographs, and/or voice for purposes of publicity and advertising for Plaintiff or the agency had to be approved by Plaintiff.

28.    On or about November 16, 2004, Michael Vorhees, pursuant to the November 16, 2004 agreement, took various photographs of Plaintiff.  Thereafter and on November 19, 2004, $MC^2$  invoiced Vorhees for Plaintiff's work for the catalog.  Plaintiff was ultimately paid one-thousand ($1,000.00) as reflected in the invoice attached as Exhibit "C".

29.    On or about December 20, 2004 and January 6, 2005, Vorhees invoiced Finish Line for work performed by Vorhees on behalf of Finish Line.

30.    On December 26, 2004 and January 6, 2005, Vorhees invoiced Finish Line and conveyed rights to Plaintiff's image – which it did not have – to Finish Line in consideration for the invoiced amounts totaling in excess of $72,000.00.  The invoices read in pertinent part:

> "...NATIONAL PHOTO USAGE GRANTED TO THE FINISH LINE FOR ONE-TIME USE FOR 'THE FINISH LINE' IN-STORE MAGAZINE, IN-STORE P.O.S. WEBSITE AND DIRECT MAIL ONLY. PHOTO USAGE GRANTED IS CONTINGENT UPON FULL PAYMENT OF FINAL INVOICE. MICHAEL VORHEES RETAINS ALL RIGHTS PER IMAGE.  ANY OTHER EXECUTION INVOLVING THESE IMAGES OR ANY PORTION OF AN IMAGE MUST BE NEGOTIATED FIRST.  IMAGES CANNOT BE SOLD OR USED TO PROMOTE OR ADVERTISE FOR ANY PRODUCT OR COMPANY OTHER THAN THE FINISH LINE STORES.  LICENSED USE: (6) MONTHS NATIONAL (USAGE OUTLINED ABOVE)."

31.    The granting by Vorhees of the usage of images, including Plaintiff's image, as designated above, was negotiated without any rights whatsoever of Vorhees to Plaintiff's image(s) and without any express, written or oral consent given by Plaintiff.

32.     Vorhees, at all times material herein, knew or should have known that Plaintiff's agreement, as reflected in Exhibit "B", was with Finish Line, for the use of her image in a catalog and only for a one-year period.

33.     Thus, Vorhees caused to be published certain advertisements containing photographic images of Plaintiff in other advertising media for marketing and campaigning Finish Line's products worldwide including, but not limited to, in Miami-Dade County, Florida, without the express, written or oral consent required by Plaintiff.

34.     That at all times material to this action, Vorhees violated Fla. Stat. §540.08.  More specifically, Defendant violated Fla. Stat. §540.08 by causing to be published photographic images of Plaintiff in advertising media, including "point of sale", "in-store magazines", "websites" and other advertising media other than that within a catalog for one year – pursuant to the agreement contained in Exhibit "B" – for purposes of marketing and campaigning Finish Line's products worldwide including, but not limited to, in Miami-Dade County, Florida, without the express, written or oral consent required by Plaintiff.

35.     Pursuant to Fla. Stat. §540.08, Plaintiff is entitled to reasonable royalties and any other such damages for any loss or injuries sustained by Plaintiff by Vorhees' breach.

WHEREFORE, Plaintiff demands judgment against Vorhees for compensatory damages, costs and attorney's fees pursuant to Fla. Stat. §540.08 and §448.08 and requests trial by jury on all issues so triable as of right.

### COUNT V – CONVERSION CLAIM AGAINST VORHEES

Plaintiff realleges paragraphs 1 through 16 and 27 through 35 as if fully set forth herein.

36.     Vorhees knowingly obtained and used the property of Plaintiff, specifically the photographs in question, either with the intent to either temporarily or permanently deprive

Plaintiff of her property and to appropriate the property to Finish Line for Vorhees' own use and gain.

37.    Vorhees' actions constitute an act of dominion - wrongfully asserted over Plaintiff's property inconsistent with its ownership therein.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

### COUNT VI – CONVERSION CLAIM AGAINST MICHAEL VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs 1 through 16 and 27 through 35  as if fully set forth herein.

38.    Michael Vorhees knowingly obtained and used the property of Plaintiff, specifically, the photographic images at issue, either with the intent to either temporarily or permanently deprive Plaintiff of her property and to appropriate the property to his and Vorhees' own use.

39.    Michael Vorhees' actions constitute an act of dominion - wrongfully asserted over Plaintiff's property inconsistent with his ownership therein.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Michael Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

### COUNT VII – CONVERSION CLAIM AGAINST KATHLEEN VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

40.     Kathleen Vorhees knowingly obtained and used the property of Plaintiff, specifically, the photographic images at issue, either with the intent to either temporarily or permanently deprive Plaintiff of her property and to appropriate the property to her and Vorhees' own use.

41.     Kathleen Vorhees' actions constitute an act of dominion wrongfully asserted over Plaintiff's property inconsistent with her ownership therein.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Kathleen Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT VIII – FRAUDULENT MISREPRESENTATION AS TO DEFENDANT VORHEES

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

42.     Vorhees' actions of granting rights – which it did not have – were done intentionally and without knowledge of Plaintiff.

43.     Vorhees intended that Finish Line would rely on Vorhees' representations that it had certain rights to Plaintiff's image – which it knew it did not have – and Finish Line relied on Vorhees' representations.  Plaintiff relied on Vorhees to represent the terms of the actual agreement (Exhibit "B"), executed by her, to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line, and Vorhees' causing to be published, photographic images of Plaintiff beyond the scope and the terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Vorhees including, but not limited to, attorney's fees pursuant to Fla.

Stat. §448.08, taxable costs and prejudgment interest. Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT IX – NEGLIGENT MISREPRESENTATION AS TO DEFENDANT VORHEES

Plaintiff realleges paragraphs 1 through 16 and 27 through 35 as if fully set forth herein.

44.     Vorhees' actions of granting rights – which it did not have – were done negligently because Vorhees should have known this statement to be false, and without knowledge of Plaintiff.

45.     Vorhees' intended that Finish Line would rely on Vorhees' representations that it had certain rights to Plaintiff's image – which it did not have – and Finish Line relied on Vorhees' representations.  Plaintiff relied on Vorhees to represent the terms of the actual agreement, (Exhibit B) executed by her – to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and Vorhees is causing to be published, photographic images of Plaintiff beyond the scope and the terms of the agreement contained in Exhibit B.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest. Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT X – FRAUDULENT REPRESENTATION AS TO DEFENDANT MICHAEL VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs 1 through 16 and 27 through 35 as if fully set forth herein.

46.     Michael Vorhees' actions of granting rights – which it did not have – were done intentionally and without knowledge of Plaintiff.

47.     Michael Vorhees intended that Finish Line would rely on his representations that it had certain rights to Plaintiff's image – which he knew he did not have – and Finish Line relied on his representations.  Plaintiff relied on Michael Vorhees to represent the terms of the actual agreement (Exhibit "B"), executed by her, to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line, and Michael Vorhees' causing to be published, photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Michael Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XI – NEGLIGENT MISREPRESENTATION AS TO DEFENDANT MICHAEL VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

48.     Michael Vorhees' actions of granting rights – which it did not have – were done negligently because he should have known this statement to be false, and without knowledge of Plaintiff.

49.     Michael Vorhees' intended that Finish Line would rely on his representations that it had certain rights to Plaintiff's image – which he did not have – and Finish Line relied on his representations.   Plaintiff relied on Michael Vorhees to represent the terms of the actual agreement, (Exhibit B) executed by her – to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and Michael Vorhees' causing to be published, photographic images of Plaintiff beyond the scope and the terms of the agreement contained in Exhibit B.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Michael Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XII – FRAUDULENT MISREPRESENTATION AS TO DEFENDANT KATHLEEN VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

50.     Kathleen Vorhees' actions of granting rights – which it did not have – were done intentionally and without knowledge of Plaintiff.

51.     Kathleen Vorhees intended that Finish Line would rely on her representations that it had certain rights to Plaintiff's image – which she knew she did not have – and Finish Line relied on her representations.  Plaintiff relied on Kathleen Vorhees to represent the terms of the actual agreement, executed by her (Exhibit "B"), to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and Kathleen Vorhees' causing to be published photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Kathleen Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08 for taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XIII – NEGLIGENT MISREPRESENTATION AS TO DEFENDANT KATHLEEN VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

52.     Kathleen Vorhees' actions of granting rights – which it did not have – were done negligently because she should have known this statement to be false, and without knowledge of Plaintiff.

53.     Kathleen Vorhees intended that Finish Line would rely on her representations that it had certain rights to Plaintiff's image – which it did not have – and Finish Line relied on her representations.   Plaintiff relied on Kathleen Vorhees to represent the terms of the actual agreement, (Exhibit B) executed by her – to Vorhees' client, Finish Line.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and Kathleen Vorhees' causing to be published, photographic images of Plaintiff beyond the scope and the terms of the agreement contained in Exhibit B.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Kathleen Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XIV – TORTIOUS INTERFERENCE WITH THE CONTRACTUAL RELATIONSHIP AS TO DEFENDANT VORHEES

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

54.     Notwithstanding Vorhees' knowledge of the terms of the agreement within Exhibit "B", Vorhees granted rights relating to the use of Plaintiff's image in violation of the agreement that it signed on behalf of Finish Line.

55.     Vorhees' actions constitute intentional and unjustified interference with Plaintiff's agreement with Finish Line.

56.     As a proximate result of Vorhees' intentional interference with the contract, Plaintiff has sustained damages including those recoverable pursuant to Fla. Stat. §540.08;

reasonable royalties.... and any other such damages for any loss or injury sustained by Plaintiff by reason of Vorhees' breach.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

### COUNT XV – TORTIOUS INTERFERENCE WITH THE CONTRACTUAL RELATIONSHIP AS TO DEFENDANT MICHAEL VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

57.     Notwithstanding Michael Vorhees' knowledge of the terms of the agreement within Exhibit "B", Michael Vorhees granted rights relating to the use of Plaintiff's image in violation of the agreement that be signed on behalf of Finish Line.

58.     Michael Vorhees' actions constitute intentional and unjustified interference with Plaintiff's agreement with Finish Line.

59.     As a proximate result of Michael Vorhees' intentional interference with the contract, Plaintiff has sustained damages including those recoverable pursuant to Fla. Stat. §540.08; reasonable royalties.... and any other such damages for any loss or injury sustained by Plaintiff by reason of his breach.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Michael Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, for taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

### COUNT XVI - TORTIOUS INTERFERENCE WITH THE CONTRACTUAL RELATIONSHIP AS TO DEFENDANT KATHLEEN VORHEES, INDIVIDUALLY

Plaintiff realleges paragraphs  1 through 16 and 27 through 35 as if fully set forth herein.

60.     Notwithstanding Kathleen Vorhees' knowledge of the terms of the agreement within Exhibit "B", she granted rights relating to the use of Plaintiff's image in violation of the agreement that Michael Vorhees signed on behalf of Finish Line.

61.     Kathleen Vorhees' actions constitute intentional and unjustified interference with Plaintiff's agreement with Finish Line.

62.     As a proximate result of Kathleen Vorhees' intentional interference with the contract, Plaintiff has sustained damages including those recoverable pursuant to Fla. Stat. §540.08; reasonable royalties…. and any other such damages for any loss or injury sustained by Plaintiff by reason of her breach.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Kathleen Vorhees including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XVII – ACTION AGAINST MC$^2$ PURSUANT FLA. STAT. §540.08

Plaintiff realleges paragraphs 1 through 16 as if fully set forth herein.

63.     Upon information and belief MC$^2$ conveyed sometime after November 19, 2004 (See Exhibit "C") to all named defendants, that they could use Plaintiff's image for advertising by Finish Line in advertising media including, but not limited to websites, in-store Point of Sale advertisements, in-store magazines, and other advertising media.

64.     In view of the actions of MC$^2$, MC$^2$ caused to be published certain advertisements containing photographic images of Plaintiff in other advertising media worldwide including, but not limited to, in Miami-Dade County, Florida without the express, written or oral consent given by Plaintiff.

65.     That at all times material to this action, $MC^2$ violated Fla. Stat. §540.08.  More specifically, $MC^2$ violated Fla. Stat. §540.08 by causing to be published photographic images of Plaintiff in advertising media, including "point of sale", in-store magazines, websites, and other advertising media other than within a catalog for purposes of marketing and campaigning Finish Line's products worldwide including, but not limited to, in Miami-Dade County, Florida without the express, written or oral consent given by Plaintiff.

66.     Pursuant to Fla. Stat. §540.08, Plaintiff is entitled to reasonable royalties and any other such damages for any loss or injuries sustained by Plaintiff by reason of $MC^2$'s breach.

WHEREFORE, Plaintiff demands judgment from $MC^2$ for compensatory damages, costs and attorney's fees pursuant to Fla. Stat. §540.08 and §448.08 and requests trial by jury on all issues so triable as of right.

## COUNT XVIII – FRAUDULENT MISREPRESENTATION AS TO DEFENDANT MC2

Plaintiff realleges paragraphs 1 through 16 and 63 through 66 as if fully set forth herein.

67.     $MC^2$'s actions were done intentionally and without knowledge of Plaintiff.

68.     $MC^2$ intended that all Defendants would rely on its representations – which they did.  Plaintiff relied on $MC^2$ to continue to represent to the named defendants the terms of the original agreement expressed to Plaintiff and Defendants.  See ¶14.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and $MC^2$ causing to be published photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against $MC^2$ including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XIX – NEGLIGENT MISREPRESENTATION AS TO MC$^2$

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

69.     MC$^2$'s actions were done negligently because it should have known them to be false and the actions were without knowledge of Plaintiff.

70.     MC$^2$ intended that all Defendants would rely on its representations – which they did.  Plaintiff relied on MC$^2$ to continue to represent to the named defendants the terms of the original agreement expressed to Plaintiff and Defendants.  See ¶14.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and MC$^2$ causing to be published photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against MC$^2$ including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XX – FRAUDULENT MISREPRESENTATION AS TO DEFENDANT KHALID SALAAM

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

71.     Khalid Salaam's actions were done intentionally and without knowledge of Plaintiff.

72.     Khalid Salaam intended that all Defendants would rely on his representations – which they did.  Plaintiff relied on Khalid Salaam to continue to represent to the named defendants the terms of the original agreement expressed to Plaintiff and Defendants.  See ¶14. As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and MC$^2$

causing to be published photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Khalid Salaam including, but not limited to, attorney's fees according to Fla. Stat. §448.08 for taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XXI – NEGLIGENT MISREPRESENTATION AS TO DEFENDANT KHALID SALAAM

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

73.     Khalid Salaam's actions were done negligently because he should have known them to be false, and the actions were without knowledge of Plaintiff.

74.     Khalid Salaam intended that all Defendants would rely on his representations – which they did.  Plaintiff relied on Khalid Salaam to continue to represent the named defendants the terms of the original agreement expressed to Plaintiff and Defendants.  ¶14.  As a result, Plaintiff has been damaged by virtue of the publishing by Finish Line and Khalid Salaam causing to be published photographic images of Plaintiff beyond the scope and terms of the agreement contained in Exhibit "B".

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Khalid Salaam including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XXII - TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS BETWEEN PLAINTIFF AND FINISH LINE AS TO DEFENDANT, MC[2]

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

75.    Notwithstanding $MC^2$'s knowledge of the terms of the agreement within Exhibit "B", it thereafter granted rights relating to the use of Plaintiff's image to the named defendants in violation of this agreement.

76.    $MC^2$'s actions constitute intentional and unjustified interference with Plaintiff's prospective business relations with Finish Line.

77.    As a proximate result of $MC^2$'s intentional interference, Plaintiff has sustained damages including those recoverable pursuant to Fla. Stat. §540.08; reasonable royalties.... and any other such damages for any loss or injury sustained by Plaintiff by reason of $MC^2$'s breach.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against $MC^2$ including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XXIII - TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS BETWEEN PLAINTIFF AND FINISH LINE AS TO DEFENDANT KHALID SALAAM

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

78.    Notwithstanding Khalid Salaam's knowledge of the terms of the agreement within Exhibit "B", Khalid Salaam thereafter granted rights relating to the use of Plaintiff's image to the named defendants in violation of this agreement.

79.    Khalid Salaam's actions constitute intentional and unjustified interference with Plaintiff's prospective business relations with Finish Line.

80.    As a proximate result of Khalid Salaam's intentional interference, Plaintiff has sustained damages including those recoverable pursuant to Fla. Stat. §540.08; reasonable royalties.... and any other such damages for any loss or injury sustained by Plaintiff by reason of Vorhees' breach.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against Khalid Salaam including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

## COUNT XXIV – AN ACTION FOR BREACH OF CONTRACT AS TO DEFENDANT MC$^2$

Plaintiff realleges paragraphs 1 through 16 and 63-66 as if fully set forth herein.

81.     At all times material herein, MC$^2$ had an agreement with Plaintiff which in no uncertain terms provided that MC$^2$ did not control the terms and conditions of Paula Perez' services and it procured a job for Plaintiff with Defendants as she negotiated in Exhibit "B".

82.     At all times material herein, this was a valid and enforceable contract. Notwithstanding the unambiguous terms of the contract, MC$^2$ breached the terms of the contract by thereafter conveying rights to Plaintiff's image which it did not have.

83.     As a result of MC$^2$'s breach, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests this court to enter judgment in favor of Plaintiff for money damages against MC$^2$ including, but not limited to, attorney's fees pursuant to Fla. Stat. §448.08, taxable costs and prejudgment interest.  Plaintiff also requests such other relief this court deems just and proper and demands trial by jury.

Respectfully submitted,

LORENZO & CAPUA
Peter Marcellus Capua, P.A.
Courthouse Plaza - 11th FL
28 West Flagler Street
Miami, FL 33130
Telephone: (305) 374-6518
Telecopier: (305) 374-4058


By: _____
            Peter M. Capua

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above and foregoing was served by mail on this _30_ day of October, 2006 upon:

Dana J. McElroy, Esquire
GORDON HARGROVE & JAMES, P.A.
Mellon Financial Center
2400 East Commercial Boulevard, Suite 1100
Ft. Lauderdale, Florida  33308


By: _____
            Peter M. Capua

### *Karin Models USA., LLC*

This Agreement is made and entered as of _Porta P Auwt 23_, 200*4*. By and between _Paula Perez Jineiro_ (hereinafter referred to as "Talent") and Karin Models (hereinafter referred to as "Manager").

In consideration of the mutual covenants and conditions set forth below, the parties hereto agree as follows:

1.   **Appointment of Karin Models as Manager**

- The undersigned Talent hereby appoints Manager to be the exclusive personal manager of Talent for the geographic region(s) of Florida, in connection with advertising, promoting and contracting for photo shoots, runway work (live appearances), television and/or film appearances, hereinafter collectively referred to as "Services".

- Manager accepts appointment as Manager, and agrees to use reasonable efforts to: seek out opportunities for Talent's Services, to contract work for Talent, and to handle billing to clients of Manager for Services performed by Talent.   It is understood and agreed that Manager does not make promises of employment under this contract.

- It is also understood by the parties hereto that Manager does not supervise the professional activities of Talent, and that Talent is not an employee of Manager, nor does Manager control the terms and conditions of Talent's services. Therefore, Manager does not provide coverage for Worker's Compensation or Disability contingencies, and these matters are the responsibility of Talent.  Talent releases Manager from liability regarding employment-related claims or responsibility for income tax withholding, worker's compensation or any other responsibility that might be imposed upon Manager on the basis of being an employer.  The relationship between Manager and Talent is that of independent contractor, and that Manager's services are not exclusive to Talent, and that Manager renders similar services to other talent.

- In the case of foreigners working in the United States with legal documents, Manager will withhold IRS taxes unless talent provides copies of the last two tax returns processed in the United States.

"*A*"

## 2.     Term

The term of this Agreement shall be the period of **21** years, commencing on _August 23_, 200**4**, and ending on the same date in 200**5**. This Agreement shall renew automatically for successive 3-year periods under the same terms, unless Talent shall terminate by giving written notice to Manager at least sixty (60) prior to the expiration of the **2** year term then in effect. _1st_

## 3.     Manager's Fee

- As compensation for the services rendered by Manager on behalf of Talent, Talent agrees to pay to Manager a fee equal to **twenty** percent ( 20%) of the gross amount of any and all monies, compensation (or the value of any non-monetary compensation) received by or on behalf of Talent for Services negotiated and/or contracted by Manager during the term of this Agreement (or negotiations for which were begun during the term of this Agreement), or any renewal or extension of such contract for Services.

- As security for timely payment by Manager to Talent, Talent hereby grants to Manager a first priority security interest in all of Talent's accounts receivable, contract rights, monies due and to become due under any agreement arising out of Talent's rendering of Services (as described herein in Section 1. above), and Talent hereby directs that any such proceeds be applied to any obligation owed by Talent to Manager.   Talent agrees to execute a Uniform Commercial Code financing statement upon request by Manager.

- Manager shall take reasonable steps to collect monies due to Talent from Talent's clients for Services performed, however, the risk and legal costs of such collection activities shall be borne entirely by Talent.

- A 5% reserve fund is held from all jobs. The reserve fund is held for any expenses that you have or may incur. Any remaining monies in this fund will be paid to the model in January and June.

## 4.     _Payment to Talent for Work Performed under this Contract_

_In cases where Manager has been paid in full on a job performed by Talent, Manager shall make payment to Talent of Talent's fee for such job (less Manager's fee and any other permitted or required deductions) on the Friday following the week that Talent delivers the voucher to Manager._

_In cases where Talent has performed a job for an established, creditworthy client of Manager, but where Talent has not yet collected payment from the client, Manager may advance up to 95% of Talent's fee for such job as follows, jobs completed through the 1st of the month will be paid on the 15th of the following month. All signed vouchers for jobs done through_

the 15th of the month will be paid on the 1st of the following month. Notwithstanding the foregoing, Manager reserves the right to decline to advance a fee to talent where the creditworthiness and/or payment history of the client is in question. There shall be no such fee advances to Talent on jobs performed for foreign clients, and the Manager shall make payment to Talent on jobs for foreign clients upon full payment to Manager.

Models who do not have a signed contract with the agency will not receive advance payment on their vouchers. Models will be paid upon receipt of funds from the client at the next payroll date.

If Manager, in its sole discretion, advances money to Talent against any past, present or future receivable, Talent agrees to and shall repay the amount of any advance not collected by Manager, and Talent hereby authorizes Manager to deduct the amount of any such unpaid advance (or portion thereof) from any amounts collected by Manager on behalf of Talent thereafter, whether collected for the same job or subsequent work.

Incidental expenses, such as foreign exchange losses, foreign transfer fees, will be back charged to the Talent.

**5.    Authority to Negotiate/Contract on Talent's Behalf**

Talent hereby appoints Manager to be Talent's Agent and Attorney-in-Fact, with authority to negotiate, contract for and execute any and all agreements and other related documents for Talent's Services, on Talent's behalf and in the name of Talent, and to bill and collect fees and compensation for Talent's Services from clients, to endorse Talent's name upon and deposit in Manager's account any and all checks payable to Talent, and to retain therefrom all sums owing to Manager. Talent also grants authority to Manager to approve and permit the use of Talent's name, likeness, photographs, and/or voice for the purposes of publicity and advertising for Talent or Manager. The foregoing authority and agency set forth above in this section are coupled with an interest, and therefore shall be irrevocable during the term of this Agreement and any renewal period or extension hereof.

> With approval of talent.
> 8/24/04 DB.

**6.    Notices**

All notices relating to this Agreement shall be sent via certified mail, addressed as follows (any change of address must be provided in writing and sent consistent with this Section):

**Talent:**

**Karin Models**

**846 Lincoln Road,**
**Miami Beach, FL 33139**

### 7.    Notice of Breach

In the event that Talent feels that Manager has breached this Agreement, Talent agrees to (and shall) within ten days of the alleged breach set forth in writing, in detail, the facts which he/she feels constitutes such breach. Manager shall have 30 days to cure such breach.

### 8.    Exclusivity

Talent hereby warrants that he/she has the right to enter into this Agreement (i.e., is not prohibited to do so by reason of any other outstanding exclusive Management or Agency agreement).

### 9.    This Written Agreement an Expression of Full Agreement

This written Agreement constitutes the full Agreement between the parties, and any discussions, negotiations, promises or statements made prior to this Agreement are not binding unless specifically set forth in this Agreement. The parties acknowledge that there is no collateral agreement, oral or written. This Agreement may be modified only by writing signed by both parties.

### 10.   Confidentiality

The parties hereto agree that the terms of this Agreement shall remain confidential, and shall not be disclosed to any person or entity, except as required for tax or legal advice or reasons. The parties further agree that each shall not make any statement of opinion disparaging the reputation or business of the other. Nothing herein shall be deemed to preclude truthful testimony in the context of a legal proceeding. The parties hereto agree that a violation of this Section shall be a breach entitling the non-breaching party to recover damages and/or injunctive relief without bond.

Understood and agreed in Miami, Florida, this 23rd day of August , 200 4 .

Talent:

_____

Printed Name: Paula Pérez

Karin Models:

By Jacqueline Bass   Title: Director

Printed Name: Jacqueline BASS

Signature of Natural or Legal Guardian for Talent under age of 18 years:

_____

Printed Name: _____

THIS IS NOT AN INVOICE - THE
INVOICE WILL BE MAILED

Invoice To _Voorhees Studios_

Address _866 West 16th St_

City & State _New Port Beach CA_
_92663_

Att Of: _____

Studio/Client _Finish Line_  Dept./Product ____
P.O. No/Release/No. Catalog

## KARIN
Models

846 Lincoln Rd. Penthouse
Miami Beach, Florida 33139
Tel: Women (305) 672-8300
Men   (305) 535-8812
Fax (305) 531-8330

TA#0000529

| Model | PAULA PÉREZ JANEIRO | | |
|---|---|---|---|
| Date | 11 | 16 | 2004 |
| Rate | Time Fr 200 To 20 | | Amount |
| Overtime Rate | Fr   To | | Amount |
| Fitting Date | Time Fr   To | | Amount |
| | | TOTAL subject to service charge | 1000 |

In consideration of receipt of the fee (inclusive of service fee)
negotiated with my manager, I hereby sell, assign and grant to  _CATALOGUE  1 YEAR_
                                                               Advertising Agency or Publication
and _____ The right and permission to copyright and/or use and/or publish one
                          (Client or Advertiser)
photograph or likeness of me in which I may be included in whole or in part of composite or reproduction thereof in color or otherwise, in:
United States and _____ for _____
                          (Other Territories)                                        (Usage for example: print advertising, packaging, point of purchase, etc.)
for _____ for_____ months to begin no later than four (4) months from this date.
                          (Product)

Accordingly, I release and discharge the companies and persons named above and persons acting for or on behalf of them from any liability by virtue of any blurring, distortion, alteration,
optical illusion, or use in composite form that may occur or be produced in the taking of said picture or in any processing thereof through completion of the finished product.
All other releases not valid unless countersigned by model manager.

Client's Representative _____    Model's Signature _____

WHITE COPY - CLIENT        YELLOW COPY - AGENCY        PINK COPY - AGENCY        GOLD COPY - MODEL

"B"

# Karin Models USA, LLC

# Invoice

846 Lincoln Road
3th Floor
Miami Beach, FL 33139

| Date | Invoice # |
|------|-----------|
| 11/19/2004 | 91004-C |

**Bill To**

VOORHEES STUDIO
Katheleen Voorhees
866 West 16th Street
Newport, CA 92663

| Model Name |
|------------|
| Paula Perez |
| Product |
| Catalog |

| Terms | Voucher # |
|-------|-----------|
| 30 days | 9104-C |

| Job Date | Description | Days/Hours | Unit Price | Amount |
|----------|-------------|------------|------------|--------|
| 11/16/2004 | Paula Perez | 0.5 | 2,000.00 | 1,000.00 |
| | Agency Fee 20% | | 20.00% | 200.00 |
| | Subtotal | | | 1,200.00 |

| **Total** | $1,200.00 |
|-----------|-----------|

PLEASE FORWARD ALL DOMESTIC  PAYMENTS TO:
KARIN MODELS USA

FOREIGN CLIENTS, PLEASE TRANSFER FUNDS IN US $ DIRECTLY TO:
MELLON UNITED NATIONAL BANK
1688 MERIDIAN AVE, MIAMI BEACH, FLORIDA 33139
ABA # 067009646    ACCOUNT # 0101016400

PLEASE REFERENCE THE INVOICE(S) THAT YOU ARE PAYING IN ALL REMITTANCES
SO WE CAN ASSURE PROPER CREDIT TO YOUR ACCOUNT.

"C"